IN THE UNITED STATES DISTRCIT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

|  |  |  |
|---|---|---|
| CHASE HUGHES and PROAI, INC. | ) | |
| Plaintiffs, | ) | Case No. 2:24-cv-00551-SPC-NPM |
| v. | ) | **AMENDED COMPLAINT** |
|  | ) | |
| JON M. REGISTER and GHOSTAURANT, LLC | ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) | |

Plaintiffs CHASE HUGHES ("Hughes") and PROAI, INC. ("PAI"), collectively the "Plaintiffs," by and through its attorneys NEIL L. POSTRYGACZ, ATTORNEY AT LAW, P.C., for its Amended Complaint against defendants JON M. REGISTER ("Register") and GHOSTAURANT, LLC, dba Virturant ("Virturant"), collectively the "Defendants," alleges, on knowledge to their own actions, and otherwise upon information and belief, as follows:

## PRELIMINARY STATEMENT

1. This is an action for libel against Defendants, who have engaged in a relentless online smear campaign against Mr. Hughes and his company PAI, formerly known as Pro Business Plans, LLC. Defendants, apparently not satisfied with the damages caused from their countless fake reviews and comments, have, upon information and belief, hacked and attacked PAI's website and online advertisements, further crippling Mr. Hughes business and sullying his and PAI's reputation.

2. Plaintiffs seek injunctive and monetary relief.

## PARTIES

3. Plaintiff Chase Hughes is a citizen of New York currently residing in the in the city of Ashland, State of New York.

4. Plaintiff PAI is a corporation formed under the laws of the State of Delaware, with its principal place of business in New York, and is in the business of business consultancy.

5. Plaintiff PAI was formerly known as Pro Business Plans, LLC ("ProBP"), a limited liability company formed under the laws of the State of Delaware.

6. On or about March 28, 2024, ProBP was converted to Plaintiff PAI, a corporation, pursuant to Section 265 of the Delaware General Corporation Law.

7. Plaintiff Chase Hughes, a citizen of New York, is the sole shareholder of Plaintiff PAI.

8. Upon information and belief, Defendant Register is a citizen of Florida and resides in the city of Fort Myers, Florida.

9. Defendant Virturant is a limited liability company formed under the laws of the State of Florida with its principal place of business in Florida.

10. Upon information and belief, Defendant Register, a citizen of Florida, is the sole member of Defendant Virturant.

## JURISDICTION AND VENUE

11. This Court possesses federal diversity under 28 U.S.C. 1332 as the parties are diverse in citizenship and the amount in controversy exceeds $75,000.

12. Venue is proper in the District Court for Middle District of Florida pursuant to U.S.C 1391(b)(1).

## FACTUAL BACKGROUND

13. From February 11, 2023, and continuing to the present date, Defendants have engaged in a relentless smear campaign full of lies against the Plaintiffs by posting numerous

fake reviews and attacking Plaintiffs'' website and advertising platforms.

14. On or about January 25, 2023, Defendant Register contacted Plaintiffs on behalf of his new business Virturant, which conducts digital marketing services through various online brands in the restaurant sector.

15. After initial discussion, Mr. Hughes provided Defendant Register with a proposal for PAI to provide Defendants with a business plan compromised of a pitch and investor deck for Virturant.

16. On or about January 27, 2023, PAI entered into an agreement with Virturant. Pursuant to the agreement, PAI would create a pitch and investor deck for Virturant in exchange for $6,500.

17. On or about January 27, 2023, PAI invoiced Virturant for $3,250 which represented 50% of the $6,500 agreed upon price for the work to be completed. Virtuant paid the $3,250 on January 27, 2023.

18. PAI, within days, substantially completed the work and submitted the decks to Defendant Register on or about February 8, 2023 for his review and comments. After initially reviewing the work, Defendant Register responded via e-mail that it looked "great."

19. On February 10, 2023, issues arose when Mr. Hughes discovered Defendant Register misrepresented his investor base, leading to a professional dispute over the quality of services provided and resulting in the termination of PAI's engagement.

20. Defendant Register did flag minor proposed revisions to the decks. After Defendant Register received the revisited decks he demanded a full refund.

21. Defendant Register's request for a refund was initially denied but was later honored by PAI in order to avoid the hassle and expense of dealing with a problem customer. Defendant Register, almost immediately after receiving his refund, started his attacks against Hughes and PAI.

22. On or about February 11, 2023, a series of defamatory attacks were launched against Mr. Hughes and PAI, spanning multiple online platforms. This included negative reviews and false complaints on Sitejabber, GoogleMyBusiness, Trustpilot, PissedConsumer, GlassDoor, ComplaintsBoard, UpCity, Yelp, BBB, and others. The attack extended to individuals and entities associated with Plaintiffs, including a broker-dealer and contractors. The timing of these attacks coincided with Defendant Register receiving his refund from PNP.

23. Plaintiffs had only received one online negative review accompanying text prior to Defendant Register's attack campaign, which was also unrelated to the products or services, with the comment referring to the sales representative 'The Representative I have talked to did not want to help me. He even hang up on me'.

24. During the early days of Defendants attacks Plaintiffs received many emails from the attacker, including one from the email address wherewegofromheredependsonyournextmove@lord.net.

25. In an effort to mitigate the influx of all the fake negative reviews, Plaintiffs posted replies to the reviews deeming them fabricated and authored by Defendant Register.

26. As a result, Plaintiffs, shortly after, started to receive messages from, upon information, Defendant Register, including one from pleaseremove@iamcooperating.com, stating "iamcooperatingandapologizing' and 'let's put this behind us. Please remove that name as I will continue to cooperate. Thankl you." Several of Defendants' negative reviews disappeared during this time and several of the currently live reviews on PissedConsumer, which does not allow users to delete reviews, were marked as 'Resolved', including several comments for three marked 'Resolved' during this period including:

> Comment #1: 'this review helped get the right outcome.',
> Comment #2: 'I would consider this issue as resolved please.'
> Comment #3: 'Company fixed the issue and I have been provided with full refund. The matter has been satisfied to my liking.'

27. On or about June 18, 2023, Mr. Hughes noticed that PAI's website homepage was no longer showing up in Google search. He further noticed PAI's website homepage was set to 'no index' which instructs Google Crawlers to remove it from the search engines. Upon information and belief, Defendant Register was responsible for these attacks, as well as for deleting Plaintiffs' Wordpress site.

28. Defendant Register, upon information and belief, has used targeted cyber-attack campaigns since around May 2023, including spam leads via Google Ads, scheduling dozens of fake meetings on the calendar of his sales representative by using the Calendly booking form creating meetings with invalid emails and/or incorrect contact information, website hacking, removing PAI website from Google Search, and negative SEO techniques, to harm Plaintiffs' reputation and business.

29. On or around October 22, 2023 Plaintiff hired a third-party cyber forensics firm to investigate the series of cyber-attacks based on the website log files of PAI. The report discovered evidence of 'critical attack attempts on WP site' and 'Attempts to Access Critical Ports. On or around this time, Defendant also connected with the CEO of the cyber forensics firm and 'followed' his company, which publicly displays the name of the firm on his LinkedIn profile.

30. In a separate report provided by the cyber forensics firm , they cite that based on an analysis of the traffic logs, a substantial number of visits of IP addresses that negatively impacted the Plaintiff websites originate from VPNs and other sources in the Fort

Myers area. The reports directly states the geographical correlation suggests a possible connection between Defendant, as he is known to operate from this location with iCloud Masked Ips.

31. Between October 22 and October 24, the cyber forensics firm stated they have reason to believe that the perpetrator attempted to attack their website between October 22, 2023, and October 24, 2023, also stating their website had not before received traffic from Fort Myers before the project initiation.

32. On or around June 4, 2024, Plaintiffs discovered that the redirect they previously had from 'ai.business-plans.com' to 'proai.co' was being redirected to 'bday.gen.xyz'. Upon investigation from the developers, it was discovered that this was done by a malicious third-party, likely to deceptively trick users and harm Plaintiffs' business marketing efforts.

33. These attacks have not stopped and have resulted in a drastic reduction in PAI's sales and the devaluation of Plaintiff's businesses.

34. Upon information and belief, Defendant Register has even hired a third party to participate in defaming and harassing Plaintiffs.

35. All the online comments and reviews made by Defendant Register are false and defamatory and directed at Mr. Hughes and PAI.

36. These reviews currently live on PissedConsumer, Complaints Board, Yelp!, and Indeed, where Defendant Register wrote reviews posing as fake employees, include:

Title: Not for those wanting a career
Review Text [Date Posted: 04/10/23]: Ineffective, Stubborn, and Immoral Ownership Consultants were scapegoated for inadequacies of Sales org or Management resulting in long hours or failed projects.
Source: Indeed.com

Title: Neglected Clients
Review Text [Date Posted: 03/12/23]: The workload would have been fine if it weren't for the unrealistic deadlines. Constant emails asking me where the completed work was even though it wasn't due. It was high pressure for no reason.
Source: Indeed.com

Title: To get my Dad's money back
Review Text [Date Posted: 11/07/23]: Chase we trusted you! You demanded we pay after the kickoff call and we promptly obliged.
Why have you gone missing?
I hate you Chase and I never hate another human being but when you cheat my family I have no boundary. Please finish the or give him his money back.
Source: PissedConsumer.com

Title: Pro Business Plans – Bad person bad plan
Review Text [Date Posted: 11/16/23]: Looked pro business plans place on a site and saw several good reviews so I called them to set up an appointment. They were able to get me in the next day and quoted me a general price of $1000-$5000.I thought that was a big range but was ok with it since this iwas so important. So I get on the phone appointment, literally spend a total of 5 minutes doing my business plan and they charged me $6,700!!! I complained and told them that I was told it would no more than a $5000. They said sorry our owner is not offering discounts. So I feel like I was overcharged and they deceived me to get me to set an appointment to begin with. Would NOT recommend this place nor would I ever go there again!!!
Source: PissedConsumer.com

Title: Stolen Valor and my hard earned money
Review Text Review Text [Date Posted: 11/16/23]: Chase said that he was in the military when he was selling me. The man is has no remorse nor the experience that he portrayed that he had.
Source: PissedConsumer.com

Title: DON'T USE
Review Text [Date Posted: 11/16/23]: Do not use Chase Hughes!! He made a major mistake on my business plan because based on his calculations, I ended up showing a profit without realizing it. He didn't even have the decency to explain to me what happened and why the pro forma was off by almost a half million dollars. When I called him about it, he just told me to adjust it myself. What a *** He's despicable.
User's recommendation: NO NO NO NO!!!

I contracted Pro Business Plans to develop a business plan. What I got in return was unfinished, inaccurate, overpriced useless document. I wasted a lot of money and time. Chase and his team are great sales people but horrible advisors.
Source: PissedConsumer.com

[Date Posted: 02/12/23]:  My choice to work with Pro Business Plans was the worst one I've ever made.
Source: Yelp!

Title: Pro Business Plans and Chase Hughes review

Review Text [Date Posted: 04/05/23]: We started working with Pro Business Plans in early November. I made the deposit after what I thought was a short kickoff call but Chase assured me that he had what he needed to start my pitch deck. We got the first iteration two weeks after making my deposit. The writing seemed like it came from a first grader and the design was low quality. The work I received does not seem like it came from the same company that delivered the monster energy business plan or that was on ABC News. I did a reverse search tonight and noticed that their address comes back to a virtual office and there are no advisors besides on their Linkedin that work there.

Comment to Review #1 [Date Posted: 04/12/23]: With all these people complaining about Pro Business Plans I found it hard to believe that he has any positive reviews until I actually read the reviews and the names. It seems like Chase is buying Google and Trustpilot reviews from people in other country's. I took screenshots of all the strange reviews. See attached.

Comment to Review #2 [Date Posted: 04/09/23]: Does Chase have over seven years or over 10 years of experience? On our call he said that he's been in business for over 15 years which would have made him around 15 years old? As per the BBB Pro Business Plans in NY was just incorporated their LLC a couple months ago. See attached.

Comment to Review 3 [Date Posted: 04/11/23]: either way he's lying.

    Source: ComplaintsBoard.com

37. Mr. Hughes consistently has requested that Defendant Register refrain from his attacks and retract the countless online false and defamatory statements already made by him.

38. Defendants' unethical attacks have caused, and continue to cause, significant compensable damage to Plaintiffs' reputation and bottom line.

## COUNT I
(Defamation-Libel Per Se)

39. Defendants have intentionally published false and defamatory statements concerning Mr. Hughes and PAI to third parties by leaving via public websites including GoogleMyBusiness, Trustpilot, PissedConsumer, and GlassDoor.

40. Defendants published the false and defamatory statements with actual malice against

Plaintiffs.

41. One example is Defendants claiming in a fake online review that Plaintiffs spent "5 minutes doing my business plan and they charged me $6,700."

42. Another example is Defendants' online review claiming Mr. Hughes lied about being in the military in order to close a customer.

43. The above statements are examples of false statements published by Defendants. For example, Mr. Hughes has never claimed to be in the military and does not take only 5 minutes to prepare business plans for any customer.

44. Defendants made these statements with knowledge of their falsity or with reckless disregard to the truth or the falsity of the statements.

45. To date, there have been approximately one hundred of fake reviews on eleven websites all made within the course of a several months, including GoogleMyBusiness, Yelp!, Glassdoor and Indeed(posting as fake employees) SiteJabber, Trustpilot, PissedConsumer, Complaints Board, Better Business Bureau (including filing of fraudulent complaints), Ripoff Report, and Birdeye.

46. These statements are defamatory in that they tend to injure, and do in fact injure, Plaintiffs' reputation, both personally and professionally.

47. These reviews are defamatory in that they tend to impeach Plaintiffs' honesty, integrity, virtue, and reputation, both personally and professionally.

48. These false and defamatory statements concerning Plaintiffs has caused significant reputational and economical damage to Plaintiffs.

49. Mr. Hughes has suffered emotional distress and mental anguish due to the numerous publications of false and defamatory reviews by Defendants.

50. As a direct result of Defendants' conduct, Plaintiffs have suffered in excess of $75,000 and in an amount to be proven at trial.

## COUNT II
(Violations of the Computer Fraud and Abuse Act 18. U.S.C. 1030)

51. Over the last year or so, Defendants have accessed Plaintiffs' protected computers and websites, without authorization, by engaging in an evolving and complex hacking scheme aimed at Plaintiff's computers, databases, and websites.

52. Plaintiffs' computers and websites are used in interstate and foreign commerce.

53. Defendants have also knowingly caused the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer of Plaintiffs.

54. Examples of Defendants wrongful conduct include bot attack that disrupted user access, misused Plaintiffs' APIs, and drained Plaintiffs' advertising funds at a rate exceeding $3,000 per day, automated traffic targeting PAI's advertising campaigns on Google, Facebook, Instagram, and other networks, and website hacking, including removing PAI's website from Google Search

55. Such actions by Defendants have resulted in continued disruptions in PAI's business.

56. As a direct result of Defendants' conduct, Plaintiffs have suffered in excess of $5,000 and in an amount to be proven at trial.

## COUNT III
**(Injunctive Relief)**

57. Defendants authored and published false and defamatory statements regarding Plaintiffs with the intent to cause harm to Plaintiffs. The statements constitute libel per se as they are false and falsely attack Plaintiffs' reputation to the public.

58. Defendants acted with malice when authoring and publishing the statements regarding Plaintiffs because Defendants knew the statements were false or acted with reckless disregard as to their falsity.

59. Defendants have also accessed Plaintiffs' protected computers and websites, without

authorization, by engaging in an evolving and complex hacking scheme aimed at Plaintiff's computers, databases, and websites.

60. Defendants knowingly caused the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer of Plaintiffs.

61. Plaintiffs have already suffered and will continue to suffer irreparable harm if Defendants are not enjoined to remove the false and defamatory statements from the Internet and are not prohibited from continuing to publish similar false and defamatory statements regarding Plaintiffs.

62. Additionally, Plaintiffs have already suffered and will continue to suffer irreparable harm if Defendants are not enjoined from accessing Plaintiffs' protected computers and websites, without authorization, and from engaging in any hacking schemes aimed at Plaintiffs' computers, databases, and websites.

63. There is no other adequate remedy at law because Defendants' defamatory and hacking conduct are of a continuing nature and Defendants have demonstrated a willingness to take any steps aimed at hurting Defendants' reputation and bottom line.

## **PRAYER FOR RELIEF**

**WHEREFORE,** based upon the foregoing, Plaintiffs demands judgment in their favor and against Defendants on all counts as follows:

    a. Issuance by this Court of an Order decreeing that the reviews and statements regarding Plaintiffs are false and defamatory;
    b. Permanent Injunctive Relief that Defendants and their agents, assigns, independent contractors, attorneys, representatives, and those persons or entities in active concert or participation with them are:
        i. Prohibited from creating or publishing statements regarding Plaintiffs;
        ii. Ordered to take all action, including but not limited to removing the false and defamatory statements against Plaintiffs from the Internet;

    c. Actual and/or compensatory damages in an amount to be proven at trial;

d. Pre- and post- litigation interest at the maximum rate provided by law;

e. Costs of this action; and

f. For all other relief as this Court may deem just and proper under the circumstances.

## **JURYDEMAND**

Plaintiffs demand a trial by jury on all issues so triable.

Dated: June 19 , 2024

                                        Respectfully Submitted.

                                        NEIL L. POSTRYGACZ
                                        ATTORNEY AT LAW, P.C.

                                        */s/ NLP*
                                        By: Neil L. Postrygacz
                                        87 Walker Street, Floor 2
                                        New York, New York 10013
                                        (646) 642-7492
                                        neil@neilesq.com